OPINION
On April 1, 1997, appellee, the Tuscarawas County Department of Human Services, filed a complaint for temporary custody of Mila McCune born September 26, 1991, Franklin McCune born December 6, 1992, and Jeana McCune born August 13, 1995, alleging the children to be neglected and dependent. Mother of the children is appellant, Vicki McCune, and father is Milo McCune. By judgment entry filed April 2, 1997, the trial court granted temporary custody of the children to appellee. On May 5, 1997, the parents admitted to the allegations in the complaint and the trial court found the children to be neglected and dependent. A case plan was filed with the ultimate goal being reunification. On August 24, 1998, appellee filed a motion for permanent custody based upon the parents' failure to comply with the case plan. Dispositional hearings before a magistrate were held on February 16, 17, 19 and 23, 1999. By decision filed March 10, 1999, the magistrate awarded permanent custody of the children to appellee. The trial court approved and adopted this decision by judgment entry filed March 29, 1999. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DETERMINED BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY TO THE TUSCARAWAS COUNTY DEPARTMENT OF HUMAN SERVICES WAS IN THE BEST INTERESTS OF THE McCUNE CHILDREN.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DETERMINED BY CLEAR AND CONVINCING EVIDENCE THAT THE McCUNE CHILDREN COULD NOT (SHOULD NOT) BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME.
 I, II
Appellant claims the trial court's decision in granting permanent custody of the children to appellee was against the manifest weight of the evidence. Appellant claims the evidence fails to establish the decision is in the best interests of the children and the children cannot be placed with the parents in a reasonable time. We disagree. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 (8) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child;
(12) Any other factor the court considers relevant.
R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
Appellee first became involved with the family in 1992 when appellee investigated a complaint of unstable housing relative to Mila who at the time was four and a half months old. T. at 143-146. Appellee's involvement with the family was off and on as the parents, Mila and two other children moved between Missouri, Ohio and Pennsylvania. T. at 152-154, 159-160. In 1996, appellee investigated a complaint that all three children were found to be inappropriately dressed when appellant took the children to the police station to report a domestic violence act by Mr. McCune. T. at 128, 133-134. In 1997, appellee investigated a complaint that the children had been left at home unsupervised. T. at 156. The 1997 involvement was the basis for the complaint sub judice. The case plans filed herein were geared toward reunification. T. at 207, 328. The parents were to obtain stable housing, maintain employment, receive parent education and follow the rules of their respective probations. Mr. McCune was to attend Pace and appellant was to attend Harbor House to eliminate the domestic violence between the parties. Appellant was also required to attend Community Mental Healthcare for assessment and therapy. During the course of the case plan, Mr. McCune was incarcerated for a sexual assault upon appellant's sister. T. at 194-195. When not in prison, Mr. McCune's longest residence was four weeks. T. at 261. Appellant was incarcerated on at least four occasions for probation violations on an underlying theft charge for writing bad checks. T. at 196, 495-505. Appellant's last incarceration sent her to Marysville for fifteen months which she was serving at the time of the final hearings. T. at 505. Appellant's release date was scheduled for March 15, 1999. T. at 506. When not incarcerated, appellant had at least twelve different residences over a six month period. T. at 203-204, 243. During the course of the case plan, appellant had six different jobs. T. at 340. Appellant kept most of her visitation appointments with the children, but Mr. McCune would cancel his appointments and in fact last saw the children in November of 1997. T. at 280-281, 283-285. Tim Haswell and Geoff Geers, appellee's caseworkers assigned to the family, and Jneanne Burns, appellee's parent educator, all testified that appellant attended the programs required by the case plan, but did not successfully complete them (Harbor House and Community Mental Healthcare). T. at 336, 341. Although appellant successfully completed the parent education portion of the case plan, she repeatedly refused help with budgeting and failed to cooperate. T. at 290-294. Both parents failed to complete the overall objectives of the case plan. T. at 216, 336. To appellant's benefit, while she was serving her sentence and released to a pre-release center in Cleveland, Ohio, The Diversity Institute, she completed that program's parenting classes, has been accepted into that program's "Phase III" which will provide her with housing and has been accepted to Cuyahoga Community College. T. at 427-428, 434. However, despite this program, appellant plans to move back to Tuscarawas County, Ohio, and marry a convicted felon (the very person who caused one of her probation violations and an approximate $8,000 phone bill). T. at 44, 49-54, 587-588. One of appellant's probation violations involved her overdose of the prescription drug Xanax which appellant consumed with alcohol following her father's death. T. at 494-495. By failing to complete the case plan in a reasonable time and in particular, failing to support the children, provide stable housing and successfully complete the required programs, both parents have demonstrated that it is not in the children's best interests to be in the custody of either parent. Appellant further argues the evidence fails to establish reunification cannot be completed in a reasonable time. As cited supra, appellee's involvement with the family began as early as 1992. The involvement in the underlying complaint began in 1997. Over an approximate two year period, the parents were intermittently incarcerated and failed to fulfill the requirements of the case plan. Although the guardian ad litem suggested long term foster care, the trial court rejected this suggestion because of the very young ages of the children (7, 6 and 3). We cannot say this rejection was an abuse of discretion by the trial court. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. The trial court considered some five hundred pages of testimony and the parents' involvement and cooperation with the case plan. Appellant did not attempt to take control of her life until incarceration forced it upon her. To reject the plan to have the children languish in long term foster care, while appellant struggles to reestablish her life in Tuscarawas County, Ohio, with a convicted felon, is a judgment matter which is neither unlawful nor an abuse of discretion. Based upon the parents' failure to complete the case plan, we find there was clear and convincing evidence to support the trial court's decision to grant permanent custody of the children to appellee. Assignments of Error I and II are denied.
The judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is hereby affirmed.
 ______________________________ FARMER, J.
GWIN, P.J. and WISE J. concur.